685 So.2d 485 (1996)
Alton F. DINGER, Jr., et ux., PlaintiffsAppellants,
v.
John R. SHEA, DefendantAppellee.
No. 96-448.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1996.
*486 Toxie L. Bush, Jr., Abbeville, for Alton F. Dinger, Jr., et ux.
L. Lane Roy, Lafayette, for John R. Shea.
Before YELVERTON, WOODARD and AMY, JJ.
WOODARD, Judge.
Alton and Jesserene Dinger brought suit against John Shea, an attorney who represented Jesserene Dinger in an auto accident case and in a workers' compensation case. The Dingers seek damages for Shea's alleged malpractice which they claim ultimately led to a denial of any reward for medical expenses in both cases. Shea filed a motion for summary judgment claiming that he never entered into an attorney-client relationship with Alton Dinger. At a hearing on the motion, Judge Hugh E. Brunson, granted summary judgment in favor of Shea as to all claims by Alton Dinger. We affirm the trial court's ruling. We find that Alton Dinger never entered into an attorney-client relationship with Shea and that, therefore, Mr. Dinger has no cause of action in this legal malpractice claim.

FACTS
This suit for legal malpractice stems from two underlying suits. The first is a workers' compensation action, No. 92-3939, District 05, Louisiana Department of Labor, Division of Workers' Compensation, relating to an alleged work-related accident of Jesserene Dinger, which occurred on March 30, 1991. Alton Dinger was not a party to those proceedings. The tribunal rejected the claims of Mrs. Dinger, finding that she did not remain disabled after August 1991. She was therefore denied benefits after that date, including medical expenses. The Dingers allege that Shea committed legal malpractice in that proceeding because he failed to attend an emergency rule nisi hearing in which the medical expenses were at issue.
The second underlying suit is Dinger v. Jory, No. 90-3457, Fifteenth Judicial District Court, Lafayette Parish, in which Jesserene Dinger and her husband, Alton Dinger, brought suit against Michelle Jory seeking damages for alleged injuries sustained in a collision involving Jesserene Dinger and Jory. Attorney A.J. Paul Fredrickson filed the original petition for damages on July 17, *487 1990. In the petition, Jesserene Dinger sought damages for emotional distress, medical expenses, and past and future lost wages, resulting from the accident. Alton Dinger also sought damages, specifically for loss of consortium and mental anguish.
On July 2, 1992, Alton Dinger filed, and was subsequently granted, a Motion for Partial Judgment of Dismissal to voluntarily dismiss with prejudice his loss of consortium and mental anguish claims. Fredrickson also filed this motion. No supplemental petition seeking additional damages on behalf of Alton Dinger was ever filed. Jesserene Dinger remained in the suit seeking damages for past and future pain and suffering and past and future medical expenses.
On September 22, 1993, John Shea enrolled as counsel of record for Jesserene Dinger in the underlying case, more than one year following the dismissal of Alton Dinger's claims. On June 10, 1994, prior to the commencement of trial, Mrs. Dinger attempted to fire Shea as her attorney. Pursuant to that request, Shea filed a motion to withdraw on June 13, 1994. The trial judge denied the motion. On June 16, a jury rendered a verdict assessing 50% fault to Jory and 50% to Jesserene Dinger, but awarded no damages to Jesserene.
Immediately following the trial, Jesserene fired Shea and filed various motions in proper person, including a motion for a new trial and JNOV, all of which were denied. Subsequently, she hired a new attorney who also filed motions on her behalf. These motions were also denied by the trial court. On September 26, 1994, the time for taking a devolutive appeal from the trial court judgment expired. Mrs. Dinger never filed a notice of appeal.
On June 22, 1995, the Dingers collectively and in forma pauperis, filed suit against Shea for damages arising from his alleged legal malpractice at the earlier trial and for his failure to appear at an emergency rule nisi hearing in a workers' compensation action filed by Jesserene. On December 7, 1995, Shea filed peremptory exceptions of no right of action and motions for summary judgment. Hearings on both motions were held on January 29, 1996. On February 8, 1996, the trial judge granted Shea's exception of no right of action and the summary judgment motion as to all claims asserted by Alton Dinger, concluding that no attorneyclient relationship ever existed between Shea and Alton Dinger, either in Dinger v. Jory or in the workers' compensation case. This appeal stems from the grant of summary judgment in favor of Shea against Alton Dinger.

ASSIGNMENTS OF ERROR
The Dingers claim the following assignments of error:
I. The Trial Court erred in holding that the voluntary (or compensated, whichever may be actually true) withdrawal of the alleged claims of the husband for loss of consortium and mental anguish caused by injuries to the wife in the Dinger v. Jory suit, had the effect of dismissing all of the husband's claims of every nature, and of removing the husband from the lawsuit, including his claims for payment of his wife's medical expenses, past and future, and hence from any attorney-client relationship with the trial attorney, Mr. Shea.
II. The Trial Court erred in failing to recognize that either husband or wife is the proper party plaintiff to enforce a community right, and that when only one spouse is made a party plaintiff for the enforcement of a community right, the other spouse becomes a necessary party and, if the other spouse might be prejudiced by his absence as a party, may even be made an additional party plaintiff by the court on its own motion.
III. The Trial Court erred in failing to recognize that the husband may appear as a party plaintiff in a lawsuit which seeks to enforce a community right, such as a right to the payment of the expenses of medical treatment of the wife, even though the community right may have resulted from an alleged legal malpractice in which the wife may have been the sole party plaintiff, or defendant, i.e., that the husband may have a claim for *488 community losses such as expenses of medical treatment, if it be proved that those [sic] losses were the result of legal malpractice toward the wife alone.
IV. The Trial Court erred in that if there were any doubt as to whether the medical expenses of the wife's medical treatment were her separate property or community property, then the Trial Court should have allowed the husband to amend the malpractice suit to show that the husband were [sic] an alternative party plaintiff, and he should not have been dismissed as a party plaintiff.

LAW

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Sav. and Loan Ass'n, 615 So.2d 318 (La.1993). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). A fact is "material" if its existence potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the relevant legal dispute. Cormier v. Wise, 93-1434 (La.App. 3 Cir. 6/1/94); 638 So.2d 688. A fact is "at issue" if there exists any reasonable doubt as to its existence. Durrosseau v. Century 21 Flavin Realty, Inc., 594 So.2d 1036 (La.App. 3 Cir. 1992).
The law of this state has always supported the proposition that "[s]ummary judgments are not favored and should be used cautiously and sparingly, and any reasonable doubt should be resolved against the mover." Penton v. Clarkson, 93-657, p. 5 (La.App. 1 Cir. 3/11/94); 633 So.2d 918, 922 (citations omitted). However, recent changes have occurred in this area as part of the 1996 legislative tort reform package. 1996 La. Sess. Law. Serv. 1st Ex.Sess. Act 9 (S.B.27) (WEST). In the 1996 special session, La. Code Civ.P. art. 966 was amended and reenacted, effective May 1, 1996. Article 966 now states, in pertinent part:
A.(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends.
* * * * * *
C. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
* * * * * *
G. Notwithstanding any other provisions of this Article to the contrary, the burden of proof shall remain with the mover.
The new standard is equivalent to the federal courts' view of the use of summary judgment. In other words, pursuant to the statute, summary judgment is now favored and should be applied liberally.
In the past, any doubt regarding the existence of material facts was to be resolved against granting the summary judgment, even if grave doubts existed as to a party's ability to establish disputed facts at trial. Penton, 633 So.2d 918 (citations omitted). The amendment does not change the law regarding burdens of proof, as the mover is still required to prove the absence of a genuine issue and his entitlement to judgment. Short v. Griffin, 96-0361 (La.App. 4 Cir. 8/21/96); 682 So.2d 249; Walker v. Kroop, 96-0618 (La.App. 4 Cir. 7/24/96); 678 So.2d 580. However, it now appears, based on the new language of section (C), that in order to rebut a showing made by the mover of the *489 non-existence of a genuine issue of material fact, the nonmoving party will be held to a higher standard of proof, i.e. a non-moving party must sufficiently establish the existence of proof of an essential element of his claim on which he is to bear the burden of proving at trial.
It is well understood that summary judgment is a procedural rule. See Penalber v. Blount, 550 So.2d 577 (La.1989). Therefore, the amended Article 966 should be applied retroactively to pending motions and cases on appeal, and particularly to the case sub judice. Short.

NECESSARY PARTIES
In his first two assignments of error, Alton Dinger contends that the trial court erred in finding that he had voluntarily dismissed all of his claims in the auto accident suit prior to Shea enrolling as counsel of record, and that, therefore, no attorney-client relationship existed. Alton Dinger claims that, because of the community nature of the medical expenses in both the Dinger v. Jory, the workers' compensation, and the legal malpractice cases, he was and is a necessary party to the lawsuit and could not, as a matter of law, have been completely dismissed as a party. Dinger argues that all of the cases involve community obligations, namely, medical expenses. Accordingly, Dinger asserts that he is a proper party plaintiff for the enforcement of such community claims in both the auto accident case and the workers' compensation case and, therefore, should not have been dismissed as a party plaintiff in this legal malpractice action. For the following reasons we find that these assignments of error lack merit.
La.Code Civ.P. art. 686 (emphasis added) states:
Either spouse is the proper plaintiff, during the existence of the marital community, to sue to enforce a community right; however, if one spouse is the managing spouse with respect to the community right sought to be enforced, then that spouse is the proper plaintiff to bring an action to enforce the right.
When doubt exists whether the right sought to be enforced is a community right or is the separate right of the plaintiff spouse, that spouse may sue in the alternative to enforce the right.
When only one spouse sues to enforce a community right, the other spouse is a necessary party. Where the failure to join the other spouse may result in an injustice to that spouse, the trial court may order the joinder of that spouse on its own motion.
Although a spouse is a necessary party in matters concerning community rights, the statute makes clear that joinder is required only where the failure to do so would result in an injustice to the non-party spouse. As this Court stated in Ellias v. Ellias, 94-1049, p. 5 (La.App. 3 Cir. 3/1/95); 651 So.2d 939, 942, writ denied, 95-834 (La.5/5/95); 654 So.2d 333:
Necessary parties are those whose interests in the subject matter are separable and would not be directly affected by the judgment if they were not before the court, but whose joinder would be necessary for a complete adjudication of the controversy. La.Code Civ.P. art. 642.
We do not dispute that medical expenses incurred during the existence of the community are community obligations. In the original petition for damages filed in Dinger v. Jory, Jesserene Dinger sought damages for all past and future medical expenses, a community interest, and damages resulting from personal injury, a personal interest. Alton Dinger could have sued separately, or joined in the same action, to enforce the community right. Dornak v. Lafayette General Hosp., 399 So.2d 168 (La. 1981). It is apparent from the petition that he did not. The petition for damages specifically stated that Alton Dinger sought damages for loss of consortium and mental anguish. No other claims were asserted on his behalf. Alton Dinger's community right was fully represented by Jesserene Dinger's claim for past and future medical expenses. Pursuant to La.Code Civ.P. art. 686, either spouse may sue to enforce a community right. The thing demanded, i.e. past and future medical expenses, would have been *490 the same for both spouses had Alton Dinger been a party to the suit. Furthermore, any amount awarded for medical expenses would be the same regardless of which spouse brought the claim. Therefore, Alton Dinger's participation was not necessary for a complete adjudication of the controversy pursuant to La.Code Civ.P. art. 642, or for complete representation of his community right. The same logic applies to the workers' compensation action where Jesserene was also seeking medical expenses. In these situations, Alton does not have a separable claim as long as Jesserene continues to seek compensation for past and future medical expenses. Alton's claims for medical expenses cannot be separated from Jesserene's claims for medical expenses, therefore, he has no separate cause of action related to the community claims.
More importantly, Alton Dinger will suffer no appreciable harm or injustice due to his non-party status in the legal malpractice claim. Shea's motion for summary judgment was granted as to Alton Dinger, but was denied as to Jesserene Dinger. Her claim for legal malpractice against Shea, in which she is seeking reimbursement for medical expenses not awarded by the jury in the auto accident or the workers' compensation action, is still on-going. Therefore, Alton Dinger's interest in the community medical expenses continues to be asserted and no harm comes to him if he is not included in the malpractice claim.

ATTORNEY-CLIENT RELATIONSHIP AND LEGAL MALPRACTICE
In his third and fourth assignments of error, Alton Dinger contends that he may appear as a party plaintiff to enforce a community right in a legal malpractice action resulting from Shea's representation of Jesserene Dinger in the underlying suits. In other words, Alton Dinger claims the trial court erred in granting Shea's peremptory exception of no right of action. For the foregoing reasons, we find that these assignments of error lack merit.
In Gorum v. Louisiana Hosp. Ass'n Employee Benefit Trust, 95-468, pp. 3-4 (La.App. 3 Cir. 11/2/95); 664 So.2d 662, 664, this Court stated:
The exception [of no right of action] is appropriate when the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with suit in a particular case. Moyers v. Altmann, 594 So.2d 6 (La.App. 3 Cir.1992). "The main function of a peremptory exception of no right of action is to raise the question of whether a remedy afforded by law can be invoked by a particular plaintiff." Id. at 8.
In other words, can the remedy afforded by law be invoked by this particular plaintiff? Twin Parish Port Comm'n v. Berry Bros., Inc., 95-425 (La.App. 3 Cir. 10/4/95); 663 So.2d 257, writ denied, 95-2665 (La.1/5/96); 666 So.2d 288. In order to determine whether the exception was properly granted in the case sub judice, the above definition must be read in conjunction with the requirements for establishing a claim for legal malpractice. In order for a plaintiff to establish a prima facie case for recovery in a claim for legal malpractice, he must prove:
1) [T]hat he and the defendant entered into an attorney/client relationship,
2) that the attorney was guilty of negligence or professional impropriety in his relationship with the client, and
3) that this conduct caused plaintiff some loss.
Edward J. Milligan, Jr., Ltd. v. Keele, 610 So.2d 1087, 1089 (La.App. 3 Cir.1992), writ denied, 612 So.2d 98 (La.1993) (citing Restrepo v. King, 569 So.2d 92 (La.App. 4 Cir.1990), writ denied, 572 So.2d 64 (La.1991); Ault v. Bradley, 564 So.2d 374 (La.App. 1 Cir. 1990); writ denied, 569 So.2d 967 (La.1990)). The existence of an attorney-client relationship is the essential element of a legal malpractice claim; otherwise, the legal remedy of a malpractice claim is not available, and no genuine issue of material fact can be said to exist. Penalber, 550 So.2d 577.
To maintain a right of action in legal malpractice against Shea, Alton Dinger must put forth proof to establish that Shea did, in fact, represent him. In other words, Alton Dinger must first satisfy the principle prong of the test. If Alton Dinger fails to satisfy his burden by a preponderance of the evidence *491 he fails to prove the first element, i.e. that an attorney-client relationship existed between him and Shea, and a claim for legal malpractice cannot stand. Alton Dinger provided no proof to sustain this requirement.
On January 29, 1996, at a hearing on Shea's Motion for Summary Judgment and No Right of Action Exception, Alton Dinger presented no documentation to support his allegation of the existence of an attorneyclient relationship. On the contrary, he stated to the court: "First off, Mr. Shea signed a contract with my wife, and I did not sign a contract ....," and later, "[I]t was our understanding that [Shea] was representing my wife in a car accident claim." Further, Dinger failed to rebut any of the proof offered by Shea as to the non-existence of an attorneyclient relationship.
In his peremptory exception of no right of action and motion for summary judgment, Shea maintained that he never represented Alton Dinger, nor did he ever enter into a contract to represent him in the Dinger v. Jory case. In support of his assertion, Shea relied on the following evidence: The original petition for damages filed by Mr. Fredrickson on July 17, 1990; the motion for partial judgment of dismissal regarding Alton Dinger's claims filed by Mr. Fredrickson on July 2, 1992; and Shea's motion to enroll as counsel of record for "Jesserene Dinger," filed September 22, 1993. These documents clearly indicate that Alton Dinger had originally filed a claim for damages in the underlying suit and then, voluntarily, had it withdrawn. Additionally, they establish that Shea enrolled as counsel of record specifically to represent Jesserene Dinger more than one year following the petition for partial dismissal filed by Alton Dinger.
In further support of his contentions, Shea produced the following undisputed evidence:
A letter dated June 16, 1994, wherein Mrs. Dinger requested her files from Shea. The letter was written in her own hand and signed only by her.
A letter dated July 18, 1994, wherein Shea replied to Mrs. Dinger's letter informing her of the time limits for filing motions for a new trial or for additur. He recognized the fact that Mrs. Dinger no longer wanted his representation, but offered to file the necessary motions in order to preserve her rights for appeal.
A motion for a new trial, filed by Mrs. Dinger in proper person, on the same day judgment was rendered.
A notice of termination filed by Mrs. Dinger on July 29, 1994, indicating that she had, in fact, fired Shea on June 17, 1994 and was in search of a new attorney.
All of these documents establish that there was a continuous and on-going attorneyclient relationship between Jesserene Dinger and Shea. All correspondence between them was either addressed to her or signed by her. Alton Dinger's name does not appear anywhere on those documents.
The burden then shifted to Alton Dinger to provide some proof of the existence of the attorney-client relationship. As required by La.Code Civ.P. art. 967, and in order to avoid the granting of summary judgment against him, Alton Dinger was required to set forth specific facts, and could not just rest on mere allegations or denials. He offered absolutely no evidence, either documentary or parole, which would tend to refute the veracity of Shea's claim.
Accordingly, based on the documentary evidence presented, as well as testimony from all parties at the hearing, the trial judge found that Shea met his burden of proof as to the non-existence of an attorney-client relationship, between him and Alton Dinger, in case number 90-3457 or in the workers' compensation action. Thus, he granted Shea's exception of no right of action and motion for summary judgment.
We agree with the trial court's conclusions. Absent a showing of attorney-client relationship, no claim for legal malpractice can be maintained. Shea is entitled to judgment as a matter of law.

CONCLUSION
For the foregoing reasons, the district court's February 9, 1996 judgment granting summary judgment in favor of John Shea is *492 affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED.